May it please the Court, Mike Petillo on behalf of HUB. This appeal follows from a trial under Section 4 of the Federal Arbitration Act. The trial concerned whether arbitration clauses in a series of brokerage service agreements between HUB or its predecessor, NALF, and the Berkeley County School District required that the county's claims in this case be sent to arbitration. Much of that trial concerned whether three unsigned agreements from 2006, 2009, and 2011 were enforceable contracts. That's not at issue here. What is at issue? There were two signed agreements from 2002 and 2003, and the county did not dispute that those contracts were enforceable. Instead, the county said that they were irrelevant because it had amended its complaint to state that the alleged bribery scheme began in, quote, at least 2005 after those two agreements expired. The evidence at the trial, however, showed that the county's claims clearly relate to the services provided while those agreements were in effect. For example, the county seeks to recover millions for insurance policies it claims it didn't need. But the evidence showed that the county had been purchasing many of those policies going all the way back to 1996, and we believe discovery will show the county is still buying many of them. Critically, the county admitted at trial that its damages claim includes $2 million for policies approved by HUB or invoices sent to the county by HUB while the 03 agreement was still in effect. That is dispositive proof that the county's claims relate to the services provided in the 03 agreement and so must be arbitrated. The district court, however, refused to even consider HUB's arguments. The district court thought that this court decided in its prior appeal that the 02 and 03 agreements could not require arbitration of any of the county's claims and that the law of the case prevented it from reconsidering that issue. Respectfully, we believe that decision should be vacated for two reasons. First, we submit that the district court misread this court's prior decision. Second, even if this court had suggested that the 02 and 03 agreements didn't apply on the face of the proceedings, excuse me, on the face of the pleadings, that did not bind the district court once the evidence at trial showed otherwise. Starting with the first issue, the district court's law of the case decision was based on its view that this court explicitly held that the 02 and 03 agreements cannot provide grounds to compel arbitration. Respectfully, we don't read this court's decision as explicitly holding that the 02 and 03 agreements cannot provide grounds to compel arbitration of any of the county's claims. To be sure, this court did state that the agreements predate the steering and kickback fraud scheme and conspiracy alleged in the operative complaint. However, we don't believe that is dispositive because the county's claims in this case simply are not limited to a steering and kickback scheme. The county has asserted claims, for example, for negligence, for negligent misrepresentation, and for breach of fiduciary duty that are based solely on recommending insurance policies that the county claims were outrageous, that it didn't need, and that no competent insurance broker ever would have recommended that the county take out. Now, those claims don't require proof of a kickback scheme. So if conduct relevant to those claims occurred while the 02 and 03 agreements were in effect, they must be arbitrated even if the kickback scheme started later, as this court noted was alleged in the complaint. So when this court explained that the arbitration clauses in the agreements could not require Berkeley schools to arbitrate any claims on the basis of conduct that began after those agreements terminated, the only conduct it mentioned in its opinion was the kickback scheme. The court did not address whether other conduct at the core of the county's claims for improperly recommending policies occurred while the 02 and 03 agreements were in place. The court left that issue for remand, and the district court's refusal to address that issue warrants reversal. Regardless of how one reads this court's prior opinion, however, there is yet another reason that the court's decision did not preclude the district court from considering whether the 02 and 03 agreements require arbitration. And that is because the law of the case simply does not apply when a court is presented with a different record at a new stage of the case. Did you bring that up in the district court? Was one of your arguments not just how to read our opinion but that the evidence had shown something different and that was a reason for the district court to revisit the issue? Yes, Judge Rushing. As you'll notice, the district court itself noted that we had pressed these arguments based on the evidence at trial. And we came forward and said, here's the reason why these relate back. The county's been taking out these policies long beforehand, and in fact a number of the same policies for which it seeks damages. We were recommending those policies. We renewed those policies while 02 and 03 agreement was in effect. And the district court recognized we were making those arguments. And its response was, you know, too bad. Unfortunately for HUB, I can't hear that argument because this court decided, you know, foreclosed that issue in its prior decision. And so the district court heard what we were saying. We made those arguments and it said, unfortunately, I simply can't address them because the law of the case binds me. We gave you a five-day trial, didn't we? Yes, Your Honor. You certainly did. And we appreciated that. And that's why, you know, we believe that the evidence produced at that trial should have been considered by the district court. That's exactly. Well, the district court gave you a five-day trial and wrote an extensive opinion. We wrote an extensive opinion. The district court did. It gave us a five-day trial. It heard us out on most of the issues. It indicated he understood the opinion. Well, you're trying to, I guess, since I was the author, you want me to say I don't think he did. Well, Your Honor, respectfully, arguing with the author of an opinion about what he meant is a losing battle. I'm the nominator here. You know, I respect that. I can only give you my reading. I understand. You need to represent your client. This thing's been going on for, what, four or five years? Yes, Your Honor. You haven't filed a responsibility. Well, that's because we had a right to seek arbitration before filing a response to pleading. You were able to take an appeal from the initial ruling on the arbitration issue because that's available by statute. It's reviewable. And you got it. And you came up here, and we pointed out that you were entitled to a trial. We gave you the trial. And you had a trial. You had five days of trial. And now you're another interlocutory appeal, basically, back again. And there had been no response to pleading. And this is, you know, it's a pretty substantial case. And then Judge Norton said twice, arbitration doesn't apply unless you can get us to change it. And you aren't even a contestant, you said, the latter years. Well, exactly for that reason, Your Honor. You know, we appreciated that we got the trial we asked for. It's a partial interlocutory appeal. We appreciate that. Whatever it is. But at some point, the merits of the proceeding need to be focused. Well, Your Honor, that's really all we were asking for. We appreciated we got our trial. We put our best case forward. The problem was. That was the trial on the question of the arbitration issue. There's no trial on the merits. You haven't had an answer. You haven't had discovery. Well, you know, respectfully, part of the time was due to the fact. Because you didn't want that. You wanted to arbitrate. A lot of the delay was based on we got an erroneous ruling in the first case. Judge Norton issued an opinion that this court found was erroneous. And, you know, I don't think it can be held against us. That might be mischaracterized a little bit, I think. I'm going by recollection. We said that there's some factual issues and that Section 4 permits a trial to resolve those. And we sent it back to have that trial conducted. And he conducted it. And he wrote an extensive opinion about that. Yes, Your Honor. And he. And you're back again on part of that. Yes, we got our trial. And we respect that Judge Norton decided a huge chunk of this case. And we respect that decision. And we're not appealing. You know, we are not trying to create ticky-tack arguments to go and appeal what we think is, you know, would have been a difficult case given the standard of review. However, we went back for a decision based on the evidence. That was the point of the trial. And the problem is with respect to this one critical part of our case, the judge refused to consider the evidence. It was like the trial never happened with respect to the O2 and O3 agreements. The court said, you know, you presented this evidence. I'm sorry. I'm not going to consider it. So, yes, we went back for a trial. But at the end of the day. We don't like the result. Well, we don't like that the court didn't consider the evidence. If the court had considered our evidence and ruled against us on the merits, we might be in a different place. But the law is clear that the law of the case, which was the basis of the court's decision with respect to the O2 and O3 agreements, does not apply when the court is presented with a different record at a different stage of the case. And this court's decision in Dillon v. BMO Harris is on point. There the court denied a motion to compel arbitration based on the pleadings. The party came back to the district court and supported its motion with evidence. And the district court said, like the district court here, I'm sorry. I can't consider that. My prior ruling was law of the case. And this court reversed. It held that the law of the case didn't apply and the district court should have decided the issue on the merits based on the evidence. And that's exactly what we're saying the district court should have done here. Regardless of how it read the prior decision, this court's prior decision was based solely on the allegations in the amended complaint. That's the whole reason this court sent it back was because the prior decision had been issued on allegations rather than evidence. That's why this court sent back for discovery and back for our trial. Well, it's the same. I mean, it's the same evidence, right, that the complaint alleged specifically with respect to these damages, right? The complaint included everything that you're relying on now except some testimony came out that confirmed that some of these damages actually were related to before 2005, right? And were arguably part, you know, during the 2003 agreement. Is that right? So there was a... But the exhibits, the complaint alleged the number of the exhibits attached to the complaint specified those numbers and what they were tied to. But the fact that it took the 30B6 witness to kind of clarify the timing. Exactly. We had a spreadsheet attached. You know, we had an extremely hard to read Excel spreadsheet, one of those that breaks across multiple pages where you're trying to piece it together. You know, that included some of the damages allegations that we're putting front and center because they clearly fall within the 2003 agreement. But we needed some confirmation of what those were. And I mean, among other things, you know, some of those payments actually fell outside the period of the, you know, of the 2003 agreement. But their 30B6 witness testified that, yes, well, even though we paid for it later after that agreement expired, the decision to renew it took place while the 2003 agreement was in effect. And it's that decision to renew that's the conduct that is, you know, the supposedly wrongful conduct, the supposedly negligent conduct, the supposedly negligent misrepresentations, the supposed breach of fiduciary duty on the non-kickback related claims. And that just confirms that the testimony then, you know, we knew we could say, all right, look, this decision was made back here. Even though that damages figure you're putting out here is. And also, I mean, respectfully, I don't think that, you know, when the court was commenting, this was not really the issue in the prior appeal either. The question was, should it have been decided based on evidence? Should it have been decided based on allegations? And there were no definitive issues about, you know, sort of what was alleged. All the things that were, you know, decided back at the trial were not what were up and being argued and actually being decided before the court in the first appeal. I see my time is up. Thank you, Mr. Mottillo. Mr. Barber. May it please the court. Philip Barber representing the plaintiff at Berkeley County School District. Your Honors, this appeal is really about what I think was a surprising trial. We went back and we had the trial that was asked for, and I don't think the result was what either side really thought. We thought that there would be maybe some evidence, maybe a signed version of the 05, 06, 09, or 2011 agreements to be found. Maybe there would be some correspondence indicating assent to one of those agreements. Maybe there would be some evidence of assent by performance. And what turned out to be the case was that the 06 and 09 agreements were not even with the school district. The 05 agreement was merely an exhibit to a failed RFP response, and the 2011 agreement was well after Stanford Corning, the employee of now HUB, was sending checks bribing Brantley Thomas, and the invoices of that went to his home, and for many reasons that was not a valid agreement. So HUB is really left with the 2002 and 2003 agreements, which are valid agreements. HUB has to somehow pull subsequent conduct under those agreements, despite this court's prior decision which says, quote, those agreements predate the steering and kickback fraud scheme and conspiracy alleged in the operative complaint.  Yes, Your Honor. Operative complaint is the same as that operative complaint that we referred to. Yes, Your Honor, and the district has argued in the briefs it would take an amended pleading to change the allegations. The court's statement that I just quoted was not based on an assumption that the allegations in the complaint, the operative complaint, are in fact true. I mean, possibly there is no fraud scheme at all. They're based on the allegations are what they say they are. The terms of the agreements are what they say are in the agreements. Evidence can disprove those allegations, but it doesn't, you can't add or subtract allegations from the complaint based on evidence developed at this trial. So, and I would like to point out that, you know, in Well, the purpose of a hearing is to, a trial is to hear evidence or attendance from witnesses, right? And you're saying that the court is in a box that I have to, or it has to ignore evidence that was garnered under oath because the pleading sort of cabined this whole case? That's what motion to dismiss seemed to be for. But trials are to determine, it's an organic thing. It's to find out, it's truth-taking. So you're saying that the court was restricted from ignoring, because otherwise it would be, it would be a farce to have a hearing if that's the case. The whole idea was to determine whether or not there was, what evidence is, and your colleague on the other side says, well, we say there are things that are related to conduct that was related back to the 02 and 03, and if facts were developed that suggested they were. So you're saying they can't because it's over, because it wasn't in the pleadings? No, Your Honor, absolutely the court can consider evidence, and that is the point of the trial. What I was trying to state is that the allegations in the complaint do not change. You know, evidence does not amend the pleading. The allegations are what they are, and the trial reveals truth. Is this allegation true? Is it false? And your question, Your Honor, does pull a phrase that is used in the briefing by HUB a lot, talking about, I believe it's the conduct relevant to the district's claims, and trying to put a time frame on that. But as an example, Mr. Percorni was hired by NOF, now HUB, in 2001, and he brought his book of business, including the school districts, with him. That hiring, I would think, is relevant in some way to the district's claims, but it would not be accurate to say that the district now is basing the complaint alleging on conduct in 2001 just because that has some relevance. The alleged scheme is what the complaint says it is, a scheme beginning in 2005, and even if there is new evidence, well, what is that new evidence? HUB alleges two things, or argues two things. First, these invoices, I believe it was Exhibit D to the amended complaint, is a vendor detail report. It erroneously listed, I believe, seven invoices that were dated because the clerical staff who pulled the report picked a cutoff date after the end of that 2003 PSA, but some of those invoices were for past services that occurred in that time. Right. That was in errors explained in the briefs, and there has been, to the extent it would be relevant, I believe it would be relevant to a motion to dismiss on the merits if the damages claimed are not supported. The second thing was these lines of insurance that had preexisted in 2003-2002. They existed back in 1996 and before. In fact, to take the inland marine example that is discussed at length in the report. I don't want to cut you off, but my point is this. You raise great points. I mean, absolutely, that's what great lawyers do. You argue those points. But their question before us today, as I understand it, is that the district court categorically said, I'm not going to even look at that because if the fact that it was these things that happened in the subsequent years, that 2002-2003 predated that and categorically, what they're saying is that we believe we've put evidence forward that show that they are related to, they don't have to be under it, but they've been related to arbitration, because they're related to those things. And the court didn't look. It doesn't mean you're wrong, but the point is that you're not the person who has to make that decision. The district court should not, and I don't mean this in a pejorative sense, but put blinders on and say, I'm not going to look at that because I understand the previous decision from the Fourth Circuit is that I can't look at that. That's foreign territory. We can't deal with that. But is that really the reading of this court? Because I'm at a disadvantage. I'm the only one on the panel today who was not on that. So my good colleagues were there, and Judge King wrote it. But it seemed to me it was not a fixed point. At that point, it seemed like these contracts, it predated. But why wouldn't they have an opportunity at this trial, the five-day trial, to say, yes, they are, and under the rules that this evidence was relevant, and you make good arguments and say it's not. But the court said, I'm not going to look at it because I cannot. That's the question. Was it right that it could not, not that whether or not the evidence was there, but that it could not? Answer that. Isn't that an overbroad reading of this opinion from the Fourth Circuit? Your Honor, I do not believe that it is an overbroad opinion. There was no new evidence that undermined what this court said, not just that they predated, but that those agreements could, quote, at best, the June 22 and June 2003 agreements, might be relevant to questions of whether Berkeley County Schools had knowledge of or assented to the subsequent agreements. Nothing was presented at trial that undermined that. The only thing argued here has been the invoices I talked about previously and some lines of insurance that, of course, the school district had during those periods and before. Why don't the invoices, it's almost $2 million, right? It's $1.5 million for policies and then some payments under the 2003 agreement. Why doesn't that change the evidentiary landscape from what was in front of the court before? Before we had a complaint and exhibits and then when you went back, there's testimony about what those exhibits mean and that some of these claim damages come from before the time period that the complaint suggested. And, I mean, do you agree that you can't have it both ways? You can't both have damages for conduct that occurred in 2003 and related to that agreement. You can't have that and not be bound by the arbitration agreement in the 2003 contract. Your Honor, actually, I would agree with the point that you're making, though I would actually have to disagree about not being bound for a separate reason that hasn't been discussed, the RFP dispute and the settlement from that. Sure, it would be up to, you'd have to decide whether, you know, whether those agreements actually, how they bind you. But you would agree that you can't have it both ways. I was a little, your brief suggested that you thought, ah, this is just damages that will come out in the wash and we can, you know, maybe they won't be liable for this amount. But it matters, the allegations matter, because whether you're seeking that amount related to that time period, you know, those two things run together, right? The 2003 agreement and damages for actions that occurred under that agreement run together and you can't kind of get the benefit and not the burden, as it were, unless, as you say, you have an independent defense to that. Yes, your Honor, I would certainly agree you can't have it both ways. And I tried to say in the briefs to the extent the damages include those seven invoices, they're simply wrong. If, just as a simple example, if someone alleges an injury and then attaches to the complaint alleging that injury erroneously an invoice for, say, a medical bill or something that predates the injury, that's just an error. And if that's all that person had to support damages, then it would presumably be dismissed on a 12B6 motion because that's an element, right? But it doesn't change the alleged injury to have a clerical error on a spreadsheet. Well, no, it's not. It's damages for a certain injury, right, for an injury that occurred before 2005 in relation, you know, potentially in relation that might be up for an arbitrator to decide in relation to these other agreements. Your Honor, I would say that those listed invoices are not descriptive of the injury. They're not describing the injury. They are included erroneously in a spreadsheet itemizing damages that are alleged to follow from injuries that are described in the complaint. Is there still time or opportunity for you to amend again, or has that ship sailed? Your Honor, that would be a question for the district court, but I would expect absolutely yes. As Judge King noted, there's been no responsive pleading. There hasn't even been a motion to dismiss. And since this amended pleading was filed, there has been, I believe it was two years of discovery, at least a full year of discovery, 10 depositions, a five-day trial. So it would, I believe, be reasonable, since we learned a lot about the case during that process, to incorporate that in a pleading before we were to engage in, you know, litigating the merits of the case. We should base that on what we know now. So absolutely. And if I could maybe segue since it seems related to the settlement of the RFP dispute. So after those valid agreements, 2002-2003, in which nothing, and this is something that we just, I think, maybe discovered, nothing untoward happened under those agreements. They were reasonable. Everything was normal. They were a process set up by Mr. Brantley Thomas's predecessor, Ken Coffey. Everything was fine. After those, the district put its business out to bid, pulled the bid. There is a two-year gap in any payments of fees to NOF. So the relationship is over. There is a threatened litigation over the way the RFP was pulled. There is a settlement agreement based on that. And that settlement agreement, the court found, I believe, concluded paragraph 147, expressly terminated the prior agreements, the 2002-2003 ones. HUB's initial brief didn't mention that at all. The reply brief denies that until the end. I think the last footnote finally recognizes that conclusion by the court and essentially argues that it's wrong. I would think that perhaps that is a bit late to assign error to one of the conclusions that the opening brief said were not being challenged. But regardless, the language of that paragraph 6 of that settlement agreement unambiguously provides that all disputes between NOF and the district shall be resolved in a judicial forum, the Berkeley County Court of Common Pleas. It is not limited to disputes related to the settlement agreement. The brokerage service agreements, on the other hand, their arbitration clauses are specifically limited to disputes related to those agreements. This settlement agreement was for all disputes whatsoever between the district and NOF. So now putting aside any sort of statute of limitations issues, if the district thought that NOF hadn't performed some services paid for that were under that 2003 agreement, it could not be arbitrated unless the parties made a new arbitration agreement. And if the HUB believed that some money was due under that, the arbitration clause clearly would not apply. It could not go to arbitration. There has been a subsequent agreement that it would be resolved in a judicial forum. We could not bring a breach of contract claim on that that would be sent to arbitration. There's an agreement that that dispute would go to a judicial forum. I don't see how it is logically possible to argue that the arbitration clause in that terminated agreement that can't apply to disputes under that agreement somehow applies to other things years later separated in time by years that are unrelated to that agreement except sharing a common subject matter. And to the extent that it appears that HUB is arguing that there's some special quality to the arbitration agreement, that it somehow survives the termination of the container agreement, I would argue that that violates the Henry Sheen case that they rely on heavily because arbitration agreements are treated on equal footing with any other contract. They don't have some special ability to survive an express agreement to terminate a contract, which there was paid cash consideration for that agreement. So it is a mystery to me how, say, damages in 2007, 8, 9, 12, 14 could be subject to an arbitration agreement in a contract that you cannot bring a claim under that contract and have it be under the arbitration agreement because it was terminated. They agreed. We paid the money and they agreed that that was terminated. So that was a new finding at the trial. That was something new. And to the extent perhaps if the court should have considered new evidence, well, it did make a conclusion on that. It did find that those prior agreements were terminated before the alleged conspiracy that's issued here. So that is in the judge's findings. And it was not challenged until the last footnote of the reply brief. So I just cannot see how HUB can overcome that express disavowal of arbitration in favor of a judicial forum. If the court has no further questions, I'd thank the court for its consideration. All right. Thank you, Mr. Bobber. Mr. Patil, you have time reserved. Thank you. I'd like to pick up by addressing this 2006 settlement agreement.  It has absolutely nothing to do with this dispute. The 2006 settlement agreement concerned a dispute when the county canceled a 2005 request for proposals for insurance. In its insurance business, that had nothing to do with the 02 and 03 agreements. The county agreed to pay HUB a commission on certain policies going forward. And HUB agreed that it had no other claim for commissions, fees, or other charges than provided in the settlement agreement. My friend got up and said that it expressly terminated the contracts. I invite you to look at the joint appendix, page 139. See if there's any mention of it terminating any prior agreements. Yeah, that was my understanding, too. It didn't touch it at all. But go ahead. And just to pick up on some of their theories, my friend again said that in this agreement, we had agreed that all disputes between the county and HUB would be decided in Berkeley County Court according to the dispute resolution provision. If that's the case, why didn't they bring this case in Berkeley County Court? If we were somehow defining all the terms of the parties' arrangements going forward, then they shouldn't have brought this case in federal district court because that's contrary to the 06 agreement. If the 2006 RFP settlement agreement wiped the slate clean and we got rid of all obligations between the parties and agreed that this payment settled all further disputes, then the implication of that would mean that all of their claims for damages from 04 and 05 up until the January 31, 2006 settlement date of this RFP  No one argued that because it's simply silly. There's no relationship between other than the parties, other than that it was between HUB and the county and the subject was an insurance dispute. They have nothing to do with each other. And if we were to find that this somehow wiped the slate clean, this is in the wrong court. They've overstated their damages by millions because the 06 agreement would have released all of those claims against HUB. There are reasons why we didn't raise this because it has nothing to do with this dispute. Also, the notion that the district court made some sort of finding that this terminated the agreements, once again, I invite you to look at the district court's decision and see what it actually said. The district court did not make any finding anywhere that the 06 settlement superseded the 02 and 03 agreement's arbitrations provisions such that they were irrelevant. The district court's holding with respect to the 02 and 03 agreements was, sorry, law of the case. I'm not addressing this. I mean, if it had found that it wouldn't have needed to reach law of the case, it would have decided this on the merits by saying the 06 agreement terminated that. That's not what it found at all. The district court said what it would look at was just whether they were evidence of the county's assent to subsequent brokerage service agreements. Now, what the court did find is that with respect to the 06 settlement agreement with RFP was that because of that, when it was looking at whether the 02 and 03 agreements were relevant to the county's knowledge or to its later assent to the later unsigned agreements, it said, well, I find that to be weak agreement of assent to the later agreements because we had this dispute and at the time we switched the county's property and casualty lines of insurance. As part of this botched RFP process that the party settled over, we moved a bunch of insurance lines that had been by private insurers. We moved those over to South Carolina's IRF, which is a public insurance fund. And so it said that for those purposes, it looks like there's a break in terms of when the coverage got moved over. It didn't say anything about terminating prior agreements. It didn't say that everyone is hereby absolved of any obligations they had under prior contracts. And it just doesn't speak to this at all. Even if you were to look at the dispute resolution provision in the 06 agreement on its face, it mentions disputes arising out of or relating to the settlement agreement itself. And again, there is no argument in this court or relevant to their claims that we are seeking to have arbitrated that has anything to do with performance under the 06 agreement. And as I mentioned earlier, were that actually the issue, then there would be a whole lot of issues about their performance by bringing this in the wrong court and by suing us for millions of dollars of damages that would have been released under their theory of what this 06 agreement now supposedly means. So I'd like to just use, I have two minutes left, I'd just like to really quickly turn back to a couple of statements that were made before. So one was that on this issue of, Judge Rushing asked a question about the spreadsheets and what was known at the time. And I believe counsel said that the invoices were not describing the injury. That's one reason why we needed to go back at the trial and tie back those allegations of damages to what is the conduct that relates to those. And so we tied that back there. That's one more reason why that evidence was relevant later. Also, you know, my colleague said, you know, the complaint didn't change and it is what it is. And I think the court has fully grasped, you know, the issue with that about trying to have its damages claims both ways. But I'd also like to just say the complaint itself doesn't, accepting it is true. If you set aside the damages claims, it just doesn't address the question. It alleges when an alleged bribery scheme supposedly started, and it said at least 2005. The complaint is completely silent as to when the other conduct concerning its other claims for negligence, for negligent misrepresentation, breach of fiduciary duty. It doesn't speak to that at all. It doesn't say this didn't start until a certain time. It's silent. So whether or not the complaint, you know, says what it says, it doesn't answer the question. And this court has held, you know, time and again that when, you know, an arbitration. Doesn't that kind of take issue with our previous opinion? No, Your Honor. I believe that this court clearly stated that the kickback and bribery scheme, you know, that the complaint, the kickback and bribery scheme alleged in the complaint did not occur until after the 02 and 03 agreements terminated. And that's, you know, we're not taking issue with that. You know, that is what the complaint says. But that left open the question of when, I see my time is up. May I finish answering your question? Yes, you may. That doesn't answer the question of when the other conduct that is not premised on kickbacks, that is not premised on bribes, that is not premised on conspiracy, that is just premised on HUB's alleged failure to comply with the professional standard of care and providing insurance services, you know, what those claims relate to and when that conduct occurred. And so we don't think that either the complaint or your prior decision answers that question. They both address the bribery and kickback scheme, but not other conduct that is at the core of their complaint and that they allege will support their entire damages amount. So thank you, Your Honors. Thank you. Thank you both for your arguments. We can't come down and greet you as we normally would in our Fourth Circuit tradition, but know very much that we appreciate your arguments and your being here. We wish you well and stay safe. Thank you. We'll proceed to our next case.
judges: Roger L. Gregory, Robert B. King, Allison J. Rushing